1
2
3
4
5
6
7
8
9
10

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

11  RALPH ALBERT MARCUS,                    2:06-cv-00926-ATG (HC)

12          Petitioner,                     ORDER DENYING PETITION FOR WRIT
                                            OF HABEAS CORPUS
13      vs.

14  DARRELL ADAMS,

15          Respondent.

16  _____

17      Petitioner Ralph Marcus is confined pursuant to the judgment of the Superior Court of

18  the State of California, County of Yolo.  A jury found Petitioner guilty of first degree murder

19  (Cal. Penal Code § 187), and found that he committed the murder for financial gain (Cal. Penal

20  Code § 190.2 (a)(1)).  He has exhausted his appeals and post-conviction remedies in the courts

21  of California, and has filed a *pro se* petition in this court pursuant to 28 U.S.C. § 2254, seeking a

22  writ of habeas corpus.

23      As grounds for relief, Petitioner has asserted constitutional errors by the Superior Court,

24  prosecutorial conduct that he alleges deprived him of due process, and ineffective assistance of

25  both trial and appellate counsel.  He has also asserted abuses of his rights while in custody, but

26  these claims were dismissed by an earlier order of this court as outside the purview of habeas

27  corpus.  After several months of pre-trial proceedings, the trial began on October 5, 1999, and

28  ended with the imposition of sentence on January 13, 2000.  The

transcript ran to nearly 3000 pages of testimony, plus additional documents and exhibits.  It was not a perfect trial.  The question here is whether the imperfections violated the federal Constitution.

FACTUAL AND PROCEDURAL BACKGROUND

This court has before it the statement of facts taken from the unpublished opinion of the Third District Court of Appeal, which carries a statutory presumption of correctness.  *See* 28 U.S.C. § 2254(e)(1).  Marcus (Petitioner) has also filed a 45 page "Preliminary Supplement" followed by a 160 page "Supplement Providing Facts Relied Upon . . .", which together attempt to set forth an alternative statement of the facts as perceived by the Petitioner, but which was essentially rejected by the trial jury.

The prosecution charged that Petitioner killed Nicholas Howard in Yolo County in the early morning of February 5, 1997, by strangling him to the point of unconsciousness and dumping his body into the Sacramento River.  Howard was the 18 year-old son of Daniel and Lillian (Patty) Howard with whom Marcus had been acquainted since 1973.  After disposing of the victim's body in the river, Marcus staged an apparent accident by causing Howard's automobile to roll into the river unoccupied.  The prosecution advanced two motives for the murder: (1) to profit from Howard's life insurance under a policy in which Marcus thought himself to be the beneficiary, and (2) to punish Howard's mother for spurning Marcus's romantic overtures.  The state tried the case without an eye witness to the killing or the disposition of the victim's body.  Conflicting experts testified to the cause of death, and to the cause of the automobile's entry into the Sacramento River.  A jail house informant, whose own agenda for testifying was thoroughly explored by direct and cross examination, was employed to try to connect Petitioner to the fatal act. See Trial Tr. vol. 7, 1907–55.  In colloquial terms, the state's case consisted of creating a tapestry of circumstantial evidence by the connection of a multitude of dots.

This court will examine Petitioner's alleged constitutional claims in three groups: (1) the admission of prosecution evidence over defense objections; (2) prosecutorial conduct that denied Petitioner a fair trial; and (3) errors and omissions by defense counsel that denied

petitioner a fair trial and an effective appeal.

## EVIDENTIARY RULINGS AT TRIAL

(1) Evidence of past "bad acts" consisting mainly of Petitioner's past success, working with one or more confederates, in obtaining cash from insurance companies by means of contrived fires, faked auto theft, faked burglary, and property damage from faked auto accidents. This evidence, over objections as prejudicial attacks on his character, in violation of California Evidence Code sections 1101 and 352, was admitted both as part of the state's case in chief and in rebuttal after Petitioner took the stand.  As the state appellate court held, most of this bad-past-acts evidence was properly admitted to impeach Petitioner's testimony portraying himself as a truthful person who made his living gambling.  Two bits of testimony, which the appellate court recognized as evidentiary errors (as inadequately connected to Petitioner), were held to be harmless under state law, and appear to this court to be harmless under *Brecht v. Abrahamson,* 507 U.S 619 (1993).  The prosecutor opened the case by promising to prove that Petitioner was an habitual criminal who lived by defrauding insurance companies, and later argued to the jury that murder for financial gain was in keeping with the Petitioner's life style and method of supplying himself with spending money while having little, if any, other visible means of support.  Two of the Petitioner's confederates in fraud testified under grants of immunity, and their credibility was thoroughly scrutinized by cross examination.  The nature and extent, as well as the remoteness of these fraudulent transactions over a period of some twenty years were all vigorously disputed in the state trial court and in the state appellate court, but, as the appellate court held, the admissible and relevant evidence of Petitioners predation against insurance companies was overwhelming.  These adverse rulings were state court applications of state law which this court has no jurisdiction to review.  *Estelle v. McGuire,* 502 U.S. 62, 67 (1991).

(2) Petitioner attempts to treat the admission of the above mentioned evidence, as well as the admission over his objection of other damaging evidence, as violations of due process. Because he did not raise the due process argument in his contemporaneous objections at trial, (on relevance and timeliness grounds) the state appellate court held the due process point

procedurally barred.  The adjudication of this claim was neither contrary to, nor an unreasonable determination of, clearly established Supreme Court precedent, and is foreclosed under AEDPA. 28 U.S.C. § 2254(d)(1).  *See Waddington v. Sarausad,* _____ U.S. _____, No. 07-772, 2009 U.S. LEXIS 867 (Jan. 21, 2009).

(3) Petitioner contends that the trial court erred (and denied him due process) in admitting the state's evidence tending to show that Petitioner had for some years been obsessively interested in the victim's mother, who rejected his advances and attempted, with mixed success, to break off communications with him. The evidence was virtually undisputed, but was challenged as irrelevant.  The trial and appellate rulings on the relevance and admissibility of this evidence, again, were applications of state law, which cannot be repackaged as federal constitutional errors by simply citing the due process clause of the Fourteenth Amendment.  *Poland v. Stewart,* 169 F.3d 573, 584 (9th Cir. 1999) (citations omitted). Petitioner's arguments fall far short of establishing that the evidence denied him a fair trial or produced a miscarriage of justice.

## PROSECUTORIAL MISCONDUCT

(1) Petitioner asserts that the prosecutor violated his right to counsel by becoming engaged in a discovery controversy with Petitioner's first defense counsel, Attorney Egar, and then created, or caused to be revealed, a conflict of interest between the public defender's office and another client, which conflict then caused Egar to remove himself from further participation in the defense.  Egar was replaced by Attorney Toney, who in due course, became the target of Petitioner's displeasure and his charges of inadequate representation at both the trial and appellate stages of the case.  To the extent that Petitioner claims prosecutorial misconduct denied him competent counsel, he has pointed to nothing in the record that tends to prove the claim, and this claim is dismissed for failure of proof.

(2) A second claim of prosecutorial or bureaucratic behavior that Petitioner asserts prejudiced his right to a fair trial arises from alleged incidents in 1999 in which one or more jurors might have seen, in or near the courtroom, the Petitioner in prison garb and shackles.  The record contains nothing to support the claim, and when it was presented to the California

1    Supreme Court, in his state petition for habeas corpus, that court denied the claim on its merits.

2    This claim rests upon the Petitioner's *ipse dixit*, prompted perhaps, by his post conviction legal

3    research.  The record does not reveal a timely objection, during the trial, to the way the

4    defendant, who was in custody, was exhibited to the jury.  Prior to the Supreme Court's

5    decision in *Deck v. Missouri,* 544 U.S. 622 (2005), the Supreme Court had no clearly

6    established precedent on the issue of shackling.  Since that case, state prosecutors and

7    courthouse personnel have been well advised to screen from the view of jurors the sight of

8    prisoners being moved in and out of court rooms in shackles.  *See Deck*, 544 U.S. at 625.

9    Pursuant to AEDPA, this court has no authority to go back to 1999 and declare a mistrial on no

10   more proof of misconduct than the Petitioner's recollection of facts as he claims to remember

11   them.  This court will not undertake, at this time, an exploration of the backward reach of newly

12   discovered constitutional law on closed convictions.  *See, e.g.*, *Teague v. Lane*, 489 U.S. 288,

13   310–11 (1989).

14           (3) Another claim is that the prosecutor wrongfully withheld from the defense evidence

15   which Petitioner now says was exculpatory, in violation of his rights under *Brady v. Maryland,*

16   373 U.S. 83 (1963).  Petitioner alleges that he systematically tape recorded all his telephone calls,

17   and that after he was arrested, the prosecution seized all his tape cassettes, together with sundry

18   copies of letters and pictures.  A request by defense counsel to the prosecutor during a pre-trial

19   discovery conference is found at transcript page 707, but does not appear to have been granted

20   by the prosecutor, or mentioned again by the defense counsel, much less presented to the trial

21   court for a ruling.  Petitioner has cited no further record, nor alleged any specific facts upon

22   which this court can conduct a review of the alleged withholding of exculpatory evidence.  While

23   Petitioner asserts prejudice from the alleged failure to return his tapes and other items seized in

24   his residence, his petition and answering papers convey only his generalized assertion that

25   witnesses who "falsely" testified against him concerning his insurance frauds and other "past bad

26   acts" could have been impeached by the taped telephone conversations if he had been afforded

27   access to them.  He has identified no place in the pre-trial record where he made a timely demand

28   for specific items of personal property that were allegedly withheld by the prosecutor, and the

record contains no ruling by the court that could be identified as an error in denying any motion if such a motion had been made.

(4) In the category of prosecutorial misconduct, Petitioner also alleges that the prosecutor intentionally made unfounded offers of proof during the trial, in order to present false evidence against him, and during the closing argument to the jury, intentionally misstated the evidence. These claims of misconduct were presented to the California Supreme Court in the state habeas proceedings, and were rejected on the merits by that court.  The trial court at least twice during closing arguments gave the jury the standard instructions that the arguments of counsel are not evidence, and appropriately reminded the jury of its exclusive duty to find the facts, and of counsel's role of representing to the jury each side's view of the evidence.   Petitioner has presented nothing to this court but his difference of opinion about the meaning of the evidence presented by the prosecution and the defense. The state's evidence was challenged constantly by the defense, and the trial court frequently conducted side-bar and chambers conferences with counsel on the admissibility of evidence.  On habeas review in this court, the standard of review is whether the alleged conduct of the prosecutor deprived the defendant of due process, a standard that the record fails to show was breached by the prosecution.

Finally, the prejudicial implications of guilt arising from the ambiguous testimony of the jail-house informer is challenged both as prosecutorial misconduct and as the erroneous introduction of evidence which denied Petitioner due process of law.  As noted earlier, a county prisoner, Glen Harms, who was in custody for failure to attend drug rehabilitation activities, and who faced the possibility of substantial felony penalties, was allowed to spend some time with the recently arrested Petitioner some 18 months before the trial commenced.  During his visit with the Petitioner, Harms testified, the Petitioner told him that he was awaiting trial for murder, and informed Harms about the charges.  Harms asked him if he "did it."  Harms testified that the Petitioner "smiled, shook his head yes and said, 'that's for the jury to decide.'"  The nearly fifty pages of transcript reveal the unfortunate, for the Petitioner, meeting between two garrulous inmates, at least one of whom was capable of confabulation.  Whatever this part of the trial teaches about the use of jail house confessionals, which appear to be produced with monotonous

1  regularity in certain kinds of criminal trials, the record before this court does not reveal a

2  deprivation of a constitutional right.

3  INEFFECTIVE ASSISTANCE OF DEFENSE COUNSEL

4      The Sixth Amendment to the Constitution provides that a criminal defendant shall enjoy

5  the right to have the assistance of counsel for his defense.  The standard by which the

6  effectiveness of counsel is measured is set forth in *Strickland v. Washington,* 466 U.S. 668,

7  (1984).  Petitioner, as noted earlier, did not have a perfect trial.  He has addressed to this court

8  more than 200 pages of laboriously detailed allegations of counsel's errors, of omission, and of

9  commission, as discussed above.  No matter how strongly he feels that the state's witnesses bore

10  false witness against him, and that his attorney failed to take timely and effective corrective

11  action to avert defeat in the trial, and to preserve a suitable record for appeal, Petitioner has

12  failed to prove the factual assertions that he has made, and has failed to show, in the record, that

13  his trial was unfair, and that his conviction was a miscarriage of justice.

14      The petition is denied.

15  Dated: February 2, 2009

17                                              /s/ Alfred T. Goodwin

18                                              _____
                                                ALFRED T. GOODWIN.
19                                              United States Circuit Judge
                                                Sitting by designation

-7-